**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CLUB GENE & GEORGETTI, LP, | ) | |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | |
| | ) | |
| vs. | ) | Case No. 1:20-cv-00652 |
| | ) | |
| XL INSURANCE AMERICA, INC., | ) | Judge Virginia M. Kendall |
| | ) | |
| Defendant/Counter-Plaintiff. | ) | |

**XL INSURANCE AMERICA, INC.'S MEMORANDUM OF LAW IN SUPPORT**
**OF ITS MOTION FOR DETERMINATION OF PRIVILEGE**
**UNDER RULE 26(b)(5)(B) AND TO COMPEL**

XL INSURANCE AMERICA, INC. ("XL"), in support of its Motion for Determination of

Privilege Under Rule 26(b)(5)(B) and to Compel, presents the following Memorandum of Law.

## I.  INTRODUCTION

XL's Motion presents two issues: whether (i) under Rule 26(b)(5)(B), a portion[1] of the

document attached as Exhibit 1 (and which is filed under seal) was inadvertently produced, and

therefore, the attorney-client privilege applies; and (ii) four (4) other documents appearing to address

the same subject matter as Exhibit 1 were properly withheld by Club Gene & Georgetti LP ("G&G")

pursuant to the attorney-client privilege.

As an initial matter, G&G's un-redacted production of Exhibit 1 amounts to a waiver of any

privilege, but more importantly, the purported privilege does not exist in the first instance because

the inadvertently produced portion of Exhibit 1 does not involve the request for or provision of legal

---

[1] Only the first email within the chain that comprises Exhibit 1, which XL highlighted for the Court's ease of reference, constitutes the purportedly inadvertently produced document. Counsel for XL marked this document as Exhibit 3 at the deposition of Collin Pierson. *See* also, deposition tr. of Collin Pierson, *infra*, at Exhibit 4.

7174139.1

advice.  Additionally, according to G&G's privilege log, attached as Exhibit 2, there are four (4) other documents on the same subject matter as Exhibit 1, and which do not appear to involve the provision or request for legal advice and should, therefore, be produced (or examined *in camera* so the privilege may be evaluated).

The issue presented by the document within Exhibit 1 and the four (4) similar documents described in Exhibit 2 involve a question posed by G&G's insurance agent, John Elder, regarding the servicing (or lack thereof) of the restaurant's fire suppression system.  On December 10, 2019, Mr. Elder wrote G&G's representatives an email seeking information and documentation concerning the fire suppression system's maintenance by service provider Martin Mack.  It appears that G&G consulted its business lawyers in connection with the development of its response to Mr. Elder—a response G&G knew would ultimately be relayed to XL.  XL maintains that the communication in Exhibit 1 is discoverable, was not "inadvertently produced," and, in light of the parallel subject matter described in four (4) similar documents within G&G's privilege log at Exhibit 2, those documents are not protected by the attorney-client privilege either, and should be produced.

In short: Does G&G's preparation of a response to Mr. Elder's question summarized as, "Did you service the fire suppression system or not?" involve the request for or provision of legal advice? XL maintains that it does not, and its Motion should, therefore, be granted.

## II.  STATEMENT OF RELEVANT FACTS AND DOCUMENTS

These individuals are relevant in connection with the Court's resolution of the discoverability of the documents that are the subject of this Motion:

(1)  John Elder, G&G's former insurance agent, employed by insurance broker, The Provant Group;

7174139.1

(2)     Michelle Durpetti, representative of G&G, and the daughter of the Gene & Georgetti restaurant's owner;

(3)     Collin Pierson, Ms. Durpetti's husband;

(4)     Adrian Mendoza, purported business counsel for G&G; and

(5)     David Stallter, another attorney at Mr. Mendoza's law firm.

For background, this case is a first-party property insurance coverage dispute between XL and its former policyholder, G&G, arising out of an October 5, 2019 fire at the Gene & Georgetti restaurant located in the River North neighborhood of Chicago. The central issue in this case is whether the insurance policy's "Protective Safeguards Endorsement" applies. Under the Protective Safeguards Endorsement, it is a condition of insurance coverage that G&G will maintain and service the fire suppression system within the restaurant's kitchen according to National Fire Protection Association ("NFPA") Standard 96.[2] *See* Exhibit 3, attached hereto, the Protective Safeguards Endorsement.

After the October 5, 2019 fire, G&G immediately represented to XL that it had complied with the condition of coverage within the Protective Safeguards Endorsement by providing invoices to XL's representatives purportedly showing servicing of the restaurant's fire suppression system. A couple of months later, however, it no longer appeared to XL that the fire suppression system *had* been serviced, and XL's representatives advised G&G's agent of its concerns. (*See* portions of Ex. 1 that were not purportedly inadvertently produced). In turn, Mr. Elder told G&G's representatives, including Ms. Durpetti: "We need your help. While we know what we have in invoices, Martin Mack is saying that they have not serviced the Chicago location since 2017? This means the burden

---

[2] NFPA 96 is the Standard for Ventilation Control and Fire Protection of Commercial Cooking Operations.

of proof that they are wrong is on us, as they cannot be responsible for the system not working if they were not servicing the system." (Ex. 1, part of document that was not purportedly inadvertently produced). In response, (and as another example of G&G's representations of compliance to XL), G&G's former Chief Financial Officer, Kevin Boughey, told Mr. Elder, "Our next semi-annual ansul system[3] inspection will be completed this month *as our last service was completed June 26, 2019*." (Ex. 1, *id.*). (Emphasis added). (In reality, though, it appears that, prior to the October 5, 2019 fire, the restaurant's fire suppression system had not been serviced by Martin Mack (or anyone) in over two (2) years).

When G&G was pressed by Mr. Elder in December 2019, and told that XL could not confirm the required servicing of the fire suppression system had been performed, G&G's Michelle Durpetti apparently sought the assistance of G&G's business counsel in crafting a response to Mr. Elder. (*See* Exs. 1 and 2). The email communications between G&G's representatives and its business counsel regarding *how* to respond to Mr. Elder are at issue on this Motion.

Exhibit 1 in an un-redacted form, along with hundreds of other documents from G&G in connection with XL's discovery requests, was produced on November 19, 2020. G&G's privilege log—which does not reference Ex. 1—was also provided on November 19, 2020. (*See* Ex. 2). G&G did not indicate at any point prior to the deposition of Ms. Durpetti's husband, Collin Pierson, that the disputed portion of Exhibit 1 had been inadvertently produced.

Two and one-half months later, on February 5, 2021, during the deposition of Mr. Pierson, XL was advised for the first time that a portion of Exhibit 1 had been inadvertently produced. During Mr. Pierson's deposition, counsel for XL marked as Exhibit 3 to the deposition the purportedly

---

[3] "Ansul system" is a brand name for a fire suppression system.

inadvertently produced document in its entirety. Mr. Pierson was then directed not to answer, and the following exchange occurred:

Mr. Eshoo (counsel for G&G):     So the first e-mail at the top, that was an inadvertent disclosure.  Mr. Mendoza is a lawyer.  This pertains to legal advice, so I'm going to instruct him [Mr. Pierson] not to answer any questions about it.  It was an inadvertent disclosure.

Ms. Medley:   Ed, were you just aware of that today?

Mr. Eshoo:     I just noticed it today.  I thought we had redacted all communications involving Mr. Mendoza prior to today.  We gave you a relatively lengthy privilege log on that and I thought it had been redacted and obviously it wasn't.

Ms. Medley:   … Mr. Pierson, Adrian Mendoza is an attorney, right?

A.     Right.

Q.     … What was your understanding as to Mr. Mendoza and his law firm generally in connection with the insurance claim to XL?

A.     I don't know the specifics.  I was cc'd on this stuff.

Q.     Was Mr. Mendoza's law firm like a business firm in connection with running the restaurants and the Club Gene entities?

A.     Yes.  They've been the business attorneys for the business, yeah.

Q.     So sort of like the family's corporate attorneys for their businesses and personal finances, things like that, correct?

A.     Yep.

(Ex. 4, Dep. Tr. of Mr. Pierson at 59:8-60:17).

Shortly thereafter, XL's counsel wrote to G&G's counsel regarding the purportedly inadvertently produced document. (*See* Ex. 5, February 11, 2021 letter).  Therein, XL's counsel

5

advised that it was sequestering that document pursuant to Rule 26(b)(5)(B), and that it did not appear that the purportedly inadvertently produced document was otherwise protected by the attorney-client privilege, nor four (4) other logged documents on the identical subject matter[4]—*especially where the email that Ms. Durpetti ultimately sent in response to Mr. Elder's December 2019 questions concerning the servicing of the system did not appear to have involved or required legal advice.* (Ex. 1).

Attached as Exhibit 6 is that final email from Ms. Durpetti to Mr. Elder, which responds to Mr. Elder's December 10, 2019 correspondence as follows:

> John,
>
> As neither Kevin nor myself were part of the business at that time we do not have any personal emails or record of any communication. Nor have we been able to locate any documents outside of what we have already provided which includes checks cashed by Martin Mack and invoices that contain addresses for both locations. We have reached out to Gene & Georgetti's former general manager regarding any knowledge he may have, since he was the point of contact but have not yet heard back. I will let you know immediately if we come across any additional information, but for now what you have is what is available.
>
> Thank you, Michelle.
>
> (Ex. 6).

On March 2, 2021, counsel for G&G finally responded to XL's counsel's February 11, 2021 correspondence, and advised that it was "crystal clear" Ms. Durpetti was seeking legal advice; that he did not have to explain why she was seeking legal advice; and that the four (4) other documents were "part and parcel" of the original email seeking legal advice, which Ms. Durpetti ultimately received. (Ex. 7).

---

[4] G&G's privilege log, Ex. 2, at G&G000652, 660-661, 669-670, and 678-679 were redacted pursuant to the attorney-client privilege because the documents purportedly consist of "correspondence regarding response to Elder's email and seeking [or providing] legal advice as to the same."

7174139.1

The question for the Court now is whether that was actually the case—was Ms. Durpetti seeking and/or receiving legal advice (as opposed to business advice) in connection with her email response to Mr. Elder? (Ex. 6).

### III.    ARGUMENT

The Court should grant this Motion and order that the purportedly inadvertently produced portion of Exhibit 1 is discoverable, and that the four (4) other documents addressing the same subject matter should also be produced, because they are not protected by the attorney-client privilege.

### A.    The Attorney-Client Privilege Was Waived.

As an initial matter, G&G has waived the attorney-client privilege as it relates to Exhibit 1 and the four (4) similar documents that are also at issue on this Motion as the disclosure of confidential information generally results in a waiver of privilege. *Heriot v. Byrne*, 257 F.R.D. 645, 654 (N.D. Ill. 2009). *See also, e.g., Allen-Bradley Co. v. Autotech Corp.*, 1989 U.S.Dist.LEXIS 12226, *7 (N.D.Ill. Oct. 6, 1989)(Ex. 8)("The general rule is that voluntary disclosure of privileged attorney-client communications waives the privilege as to all other communications on the same subject.")

Nonetheless, under Federal Rule of Evidence 502, disclosure of privileged information may not operate as a waiver where: "(1) the disclosure is inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B)." Fed.R.Evid. 502(b)(1)-(3). All three elements of Fed.R.Evid. 502(b) must be satisfied to prevent the waiver of the purported privilege or protection. *Heriot* at 654.

In this case, the extent of G&G's efforts to "rectify" the purported inadvertent production were to advise XL's counsel of the apparent production error *during* the deposition of Mr. Pierson—G&G did nothing in the two and one-half months before the deposition and after the document was

7174139.1

produced, nor since, to "claw back" the document. *See, supra*, regarding statements during the deposition of Mr. Pierson (Ex. 4), and the cursory response of G&G's counsel to XL's counsel's February 11, 2021 letter (Ex. 7). To date, G&G has not, for example, sought the Court's assistance concerning the disputed portion of Exhibit 1 via a motion for protective order, nor sought the return of the document in some other manner, which is the appropriate procedure under Fed.R.Evid. 502 and Rule 26(b)(5)(B). *See, e.g., Harmony Gold U.S.A. v. FASA Corp.*, 169 F.R.D. 113 (N.D.Ill. 1999); *Williams v. District of Columbia*, 806 F.Supp2d 244 (D.D.C. 2011); *Walker v. White*, 2018 U.S.Dist.LEXIS 80589 (N.D.Ill. 2018)(Ex. 9); *Clarke v. J.P. Morgan Chase & Co.*, 2009 U.S.Dist.LEXIS 30719 (S.D.N.Y. April 10, 2009)(Ex. 10).

On this basis alone, XL's Motion should be granted.

**B.      The Documents at Issue Do Not Seek *Legal* Advice.**

Leaving aside G&G's failure to adhere to Rule 26(b)(5)(B) and/or Fed.R.Evid. 502, the disputed portion of Exhibit 1, and, presumably, the four (4) other documents on the same subject matter, do not appear to involve legal advice. XL is hard-pressed to see how responding to a basic question involving basic facts needs a lawyer's handiwork, i.e., the provision or receipt of legal advice. Mr. Elder was simply seeking confirmation regarding the servicing and maintenance of the restaurant's fire suppression system. (*See* undisputed portions of Ex. 1).

"Courts have utilized the following test to distinguish legal from non-legal advice: [A] matter committed to a professional legal adviser is *prima facie* so committed for the sake of legal advice … and is therefore within the privilege unless it appears to be lacking in aspects requiring legal advice." *Weeks v. Samsung Heavy Indus.*, 1996 U.S. Dist. LEXIS 7397 at 5 (N.D.Ill. 1996)(Ex. 11). The attorney-client privilege does not apply, however, where ***business advice is sought, only legal advice.*** *Stafford Trading, Inc. v. Lovely*, 2007 U.S. Dist. LEXIS 13062 at 7 (N.D.Ill. 2007)(Ex. 12). *See also,*

*Muro v. Target Corp.*, 2006 U.S. Dist. LEXIS 86030 at 16 (N.D.Ill. 2006)(Ex. 13)("The attorney-client privilege excludes from its scope even confidential communications with a lawyer about business or other non-legal matters.") "The scope of the privilege is narrow, because it is a derogation of the search for truth. The privilege applies to communications by a client to a lawyer and vice versa. The legal advice given to the client must be the predominant element in the communication and will not apply where the legal advice is incidental to business advice." *Certain Underwriters at Lloyds v. Fidelity & Cas. Co.*, 1997 U.S. Dist. LEXIS 19670 at 4 (N.D.Ill. 1997)(internal citations omitted)(Ex. 14). *See also, Weeks v. Samsung Heavy Indus.*, 1996 U.S.Dist.LEXIS 7397 at 5 (N.D.Ill. 1996)(Ex. 11)("[A] matter committed to a professional legal adviser is *prima facie* so committed for the sake of legal advice … and is therefore within the privilege unless it appears to be lacking in aspects requiring legal advice.") The courts have recognized a fine line between legal advice and business or non-legal advice. *Lovely* at 7. "[M]erely sending a communication to an attorney does not cloak a business document with the protections afforded by the attorney-client privilege." *Lovely* at 8.

For example, in *Lee v. Chi. Youth Ctrs.,* 304 F.R.D. 242 (N.D.Ill. 2014), an employee sent an email to counsel seeking advice regarding "the preferred language" of certain finance committee minutes, and if revisions to the minutes were deemed desirable. *Lee,* 304 F.R.D. at 252. There, the court ruled that the email was not privileged, "as editorial changes or contributions by a lawyer do not qualify under the attorney client privilege." *Id.*; *citing Musa-Muaremi v. Florists' Transworld Delivery, Inc.*, 270 F.R.D. 312, 314-16 (N.D.Ill. 2010).

Likewise, in *Musa-Muaremi*, the court emphasized that the premise for attorney-client protection must be that legal advice is communicated. *Musa-Muaremi* at 316. Similar to *Lee*, the counsel's contribution to an employees' internal memorandum involved in *Musa-Muaremi* contained no legal advice. *Id.* Instead, counsel's contribution contained merely editorial content, "word-

9

7174139.1

smithing what purports to be the description by human resources personnel of meetings with [an employee] in memos that were to go into [the employee's] file." *Id*.

Here, it does not appear that Ms. Durpetti was seeking legal advice in connection with a "response to Elder's email," as described in G&G's privilege log (Ex. 2), and which, presumably, constitutes the purported basis for the inadvertent disclosure related to Exhibit 1. XL surmises that, as in *Lee* and *Musa-Muaremi*, Ms. Durpetti was merely seeking "word-smithing" to the wording in her email correspondence responding to Mr. Elder, which, in the end, only advised that she did not work at the restaurant in the years prior to the October 5, 2019 fire anyway. (*See* Exhibit 6). This is, at best, non-legal and/or business advice, and is not protected by the attorney-client privilege. *See Lovely* at 7. Therefore, XL's Motion should be granted, and the purportedly inadvertently produced portion of Exhibit 1 and the four (4) documents regarding the same subject matter listed within Exhibit 2 should be produced.

## VI. CONCLUSION

Again, XL's Motion presents two issues—the purportedly inadvertent production and discoverability of a portion of Exhibit 1 and the discoverability of four (4) similar documents logged within Exhibit 2—which the Court should resolve in XL's favor, and require the production of all of these documents. How G&G should respond to its insurance agent's questions concerning the service and maintenance of its restaurant's fire suppression system does not appear to require legal advice, and, therefore, such communications and documents are not protected by the attorney-client privilege.

XL's Motion should be granted.

10

7174139.1

Respectfully submitted,

/s/ Mindy M. Medley
Mindy M. Medley

DENNIS D. FITZPATRICK
MINDY M. MEDLEY
CLAUSEN MILLER P.C.
10 South LaSalle Street
Chicago, Illinois 60603-1098
(312) 855-1010
dfitzpatrick@clausen.com
mmedley@clausen.com
*Attorneys for XL Insurance America, Inc.*

11

7174139.1

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 16th day of March, 2021, she electronically filed the foregoing with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, using CM/ECF system, which sent notification of such filing to the parties who are registered participants with the System.

*/s/ Nicole Andersen*

## SERVICE LIST

Edward Eshoo, Jr.
Christina M. Phillips
MERLIN LAW GROUP
181 West Madison, Suite 3475
Chicago, Illinois 60602
Telephone: (312) 260-0806
Facsimile: (312) 260-0808
eesshoo@merlinlawgroup.com
cphillips@merlinlawgroup.com

12

7174139.1