IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CLUB GENE AND GEORGETTI, LP, | ) | |
| | ) | |
| Plaintiff, | ) | No. 20 C 652 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| XL INSURANCE AMERICA, INC. | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

**INTRODUCTION**

Unfortunately, *excessive* claims of attorney-client and work-product privilege are commonplace in modern litigation and are often indiscriminately and improperly applied to documents that do not qualify for protection. *See Urban 8 Fox Lake Corp. v. Nationwide Affordable Housing Fund,* 334 F.R.D. 149, 154 (N.D.Ill. 2020)(and cases cited); *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 2018 WL 1804350, at *1 (N.D. Ill. 2018). This case, which involves a restaurant fire and the ensuing conflict between the restaurant and its insurance carrier, is no exception.

Courts have repeatedly recognized that while litigation often results from an insurance company's denial of a claim, it cannot be said that any document prepared by an insurance company after a claim has arisen is protected by the attorney-client privilege or is prepared in anticipation of litigation within the meaning of the Federal Rules of Civil Procedure. In other words, "[t]he mere contingency that litigation may result is not determinative of a claim of privilege by an insurance company. If, in connection with an accident or an event, a business entity in the ordinary course of business conducts an investigation for its own purposes, the resulting investigative report is

producible.... The fact that a defendant anticipates the contingency of litigation resulting from an accident or event does not automatically qualify an 'in house' report as work-product.... [T]he primary motivating purpose behind the creation of a document or investigative report must be to aid in possible future litigation." *Zullig v. Kansas City Power & Light Co.*, 1989 WL 7901, at *4 (D. Kan. 1989). *See also U.S. Fire Insurance Co. v. Bunge N.A., Inc.*, 247 F.R.D. 656, 659 (D.Kan. 2007); *Thomas Organ Co. v. Jadranska Slobodna Plovidba*, 54 F.R.D. 367, 373 (N.D.Ill. 1972).

Like so many insurance cases, the instant case unfortunately has proven to be fertile ground for a knock-down, drag-out fight over claims of privilege and work-product. Indeed, the parties have threatened each other with motion practice directed at the claims of privilege that each party has raised. [Dkt. #67 at 8]. The plaintiff has filed a Motion to Compel the production of about 40 documents covering about 120 pages [Dkt. #60, 68] from the "Gallagher" privilege log. The specified items appear in the log as numbers 21-25, 30-31, 36-37, 41-42, 55-56, 90, 96-100, 650, 655-656, 660-661, 664-668, 892-893, 895, 911-912, 920, 923-927, 1505-1507, and 1515-1516; from the "Butler" privilege log: 31-34, 332, 339-341, 794-796, 810-811, 816-819, 824-827, 840, 853-857, 872-873, 899-903, 984-989, 990-995, 1007-1012, 1025, 1032-1036, 1248-1250, 1251-1253, 1461-1463, 1671-1673, 1898-1902, 2133-2135, and 2343-2345. Defendant has refused to produce these documents, claiming they are protected from discovery by either the attorney-client privilege and/or the work-product doctrine. [Dkt. #67]. The documents have been produced for *in camera* review.

## FACTUAL BACKGROUND

The plaintiff's steakhouse was damaged in a fire on October 5, 2019. Plaintiff submitted a claim to its insurer, defendant XL, which sent the claim to "the authorized claim administrator for

plaintiff's claim, Gallagher Bassett Services." Aaron Palmer, Senior Resolution Manager from Gallagher, brought in McLarens for the investigation. The adjustor from McLarens, Steve Frane, then passed things along to Envista Forensics and David deVries of Firetech Engineering. At this juncture, XL brought in the law firm of Butler Weihmuller Katz Craig as subrogation counsel, specifically Dean Rauchwerger.

In short order, XL issued three partial payments to plaintiff on October 18, October 29, and November 12, 2019 totaling $469,000. But, on January 22, 2020, XL sent plaintiff a reservation of rights letter by certified mail. By the time plaintiff received it, it had already filed suit, on January 29, 2020.

Back to the involvement of Mr. Rauchwerger. Here is what Will Prebil, had to say about that last assignment in his affidavit:

> Because Club Gene's insurance claim involved a fire of unknown cause and origin, which spread beyond the kitchen of the Gene & Georgetti restaurant, XL immediately retained attorney Dean Rauchwerger, counsel with the law firm Butler, Weihmuller, Katz, and Craig, as subrogation counsel to represent it and a team of professionals to investigate the cause and origin of the fire, and reason for its spread, in anticipation of filing a lawsuit against any potentially responsible party.

(Prebil Aff, ¶. 6). Actually, according to Mr. Prebil's deposition testimony, Mr. Rauchwerger was not brought in "immediately," but nine days later. The fire investigation was ongoing by that time. Mr. Frane and Mr. Besse were onsite as of October 7th, and Mr. DeVries made an inspection on October 14th. Mr. Rauchwerger was unknown to these gentlemen at the time. (DeVries Dep, at 97). Mr. DeVries didn't hear of him until the end of October, and, as of October 24th, he did not know what Mr. Rauchwerger's role was. (DeVries Dep, at 100). So, contrary to Mr. Prebil's affidavit and defendant's position, Mr. Rauchwerger was not "leading" anything "immediately" after the fire. (Prebil Aff, ¶. 10).

Some of those facts undermine several of the entries in the defendant's privilege log. For example, Document No. 21-25 of the Gallagher log is dated October 11 to 16 and described as "Claim notes on retention of subrogation counsel and work of subrogation counsel." But Mr. Rauchwerger wasn't retained as of October 11 or involved in the fire investigation as of those dates. As another example, Document No. 96-100 of the Gallagher log is dated October 16 and is described as "First report" to Will Prebil. As counsel was not directing the investigation at that point, the document is clearly an in-house, regular-course-of-the-insurance-business report. Document 650 is dated October 16 and is tersely described as "Claim notes on reserves, subrogation counsel." Again, Mr. Rauchwerger was not involved in the inspection at that time. Documents Nos. 892-893, 895, and 911-912 are similar if not identical. Those are just a handful of examples.

Importantly, in his affidavit, Mr. Prebil states that counsel was retained because there was a fire of unknown origin. But aren't many – perhaps most – fires of unknown origin, at least until they are investigated? Indeed, Mr. Prebil confirmed at his deposition that it was standard practice in defendant's insurance business to retain subrogation counsel in *every* property insurance loss to investigate subrogation opportunities, which contradicts the suggestion in his affidavit – and one of the premises throughout defendant's presentations on this matter – that Mr. Rauchwerger was retained specifically in this case when litigation was anticipated. Bringing in Mr. Rauchwerger, then, was standard practice. That is often an issue and a problem in insurance cases where, invariably, insurance companies too often make blanket claims of attorney-client privilege and work-product, as XL has done here.

There are several problems with XL's privilege logs, and they only got worse once the documents were produced *in camera*. For example, XL submits that the documents plaintiff seeks

4

in its motion are privileged:

> These documents—again, many of which are from XL's subrogation counsel's own *files—constitute attorney-client privileged communications* and related documents that were generated in connection with XL's analysis of a potential lawsuit against parties that may have been responsible for the cause, origin, and/or spread of the fire at the Gene & Georgetti restaurant. As explained by XL's Will Prebil in Exhibit 5, hereto, a team of professionals was assembled on XL's behalf "to investigate the cause and origin of the fire, and reason for its spread, in anticipation of filing a lawsuit against any potentially responsible party." (Ex. 5). *This is exactly what the work-product doctrine was designed to protect*.

[Dkt. #67, at 8 (emphasis added)]. But that is quite clearly an incorrect statement of things, and, at the outset, XL seems to conflate the two concepts. In fact, as to every one of the documents at issue, XL claims *both* the attorney-client privilege and work-product protection. But the two things are very different and must be established in two very different ways. *United States v. Nobles*, 422 U.S. 225, 238 n. 11 (1974); *Appleton Papers, Inc. v. E.P.A.*, 702 F.3d 1018, 1024 (7th Cir. 2012).

On the one hand, there is the attorney-client privilege, which protects communications made in confidence by a client (or a client's employees) to an attorney, acting as an attorney, for the purpose of obtaining legal advice. *Upjohn Co. v. United States*, 449 U.S. 383, 394–99 (1981). For the attorney-client privilege to attach to a document, the communication contained therein must have been made in confidence to a lawyer, in connection with the provision of legal services and in the context of an attorney-client relationship. *Shaffer v. Am. Med. Ass'n*, 662 F.3d 439, 446 (7th Cir. 2011). The privilege is construed narrowly, and the burden is on the party seeking to invoke the privilege—here, the defendant – to establish that it applies. *Shaffer*, 662 F.3d at 446; *United States v. White*, 950 F.2d 426, 430 (7th Cir.1991).

On the other hand, as for claims of work-product, the fact that this is an insurance case makes the issue far more complex than it ordinarily is. The work-product doctrine prevents "a party [from]

5


discover[ing] documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its ... agent." Fed.R.Civ.P. 26(b)(3)(A); *Appleton Papers, Inc. v. E.P.A.*, 702 F.3d 1018, 1022 (7th Cir. 2012). Work-product protection applies to attorney-led investigations when the documents at issue "can fairly be said to have been prepared or obtained because of the prospect of litigation." *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 976–77 (7th Cir.1996) (internal quotation marks omitted). There is a distinction between precautionary documents "developed in the ordinary course of business" for the "remote prospect of litigation" and documents prepared because "some articulable claim, likely to lead to litigation, [has] arisen." *Binks Mfg. Co. v. Nat'l Presto Indus., Inc.*, 709 F.2d 1109, 1120 (7th Cir.1983) (emphasis added). Only documents prepared in the latter circumstances receive work-product protection. *Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 622 (7th Cir. 2010).

While much of the paperwork generated by insurance companies is prepared with an eye toward a possible legal dispute over a claim – a fact insurance companies regularly rely on in discovery disputes – it is important to distinguish between "an investigative report developed in the ordinary course of business" as a precaution for the "remote prospect of litigation" and materials prepared because "some articulable claim, likely to lead to litigation ... ha[s] arisen." *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 976–77 (7th Cir. 1996). The fact that a defendant anticipates the contingency of litigation resulting from an accident or event does not automatically qualify 'in house' insurance company reports as work-product. *Binks*, 709 F.2d at 1119. Otherwise, almost everything would qualify as work-product.

Reports on more or less routine investigations of a claim to determine if they are resistable are not immunized from discovery as they are developed in the ordinary course of business. *Binks*,

709 F.2d at 1119. Courts must guard against the work-product doctrine becoming "an all-encompassing shroud of secrecy that is at once at odds with the federal rules' liberal discovery policy and the protection of attorney's thought processes and strategies the doctrine was designed to be." *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 145 F.R.D. 84, 87 (N.D. Ill. 1992). *See also Pryor v. Target Corp.*, 2020 WL 6149569, at *6 (N.D. Ill. 2020).

It can be helpful to break the preparation of insurance documents down into aspects of causation and anticipation. As *Allendale* long ago explained:

> As already noted, "work-product" is defined as those materials produced because of the anticipation of litigation. Thus, there is a "causation" element insofar as production of the material must be caused by the anticipation of litigation. If materials are produced in the ordinary and regular course of a discovery opponent's business, and not to prepare for litigation, they are outside the scope of the work-product doctrine. Accordingly, even if litigation is imminent, there is no work-product immunity for documents prepared in the ordinary course of business rather than for litigation purposes. That is to say, the mere fact that a discovery opponent anticipates litigation does not qualify an "in-house" document as work-product.
>
> As for "anticipation of litigation," courts have made clear that, because litigation can be anticipated at the time almost any incident occurs, a substantial and significant threat of litigation is required before a discovery opponent's anticipation will be considered a reasonable and justifiable motivation for production of a document. Although a precise definition of this level of "threat" is elusive, it is perhaps best described as requiring a showing of "objective facts establishing an identifiable resolve to litigate." The fact that litigation actually ensues or that a party has retained an attorney, initiated investigations, or engaged in negotiations over a claim, is insufficient to dispositively establish anticipation of litigation.

145 F.R.D. at 87(citations omitted).

Mr. Prebil's claim that counsel is often routinely brought in in insurance cases does not automatically mean that documents defendant claims are work-product are protected by the work-product privilege, since many would have been prepared whether or not litigation was anticipated. If so, the privilege, which no one denies is an impediment to truth seeking and must therefore be

narrowly construed, *see, e.g., University of Pennsylvania v. E.E.O.C.*, 493 U.S. 182, 189 (1990); *United States v. Lawless*, 709 F.2d 485, 487 (7th Cir. 1983); *Miller U.K. Ltd. v. Caterpillar, Inc.*, 2014 WL 67340, 12 (N.D.Ill. 2014)(collecting cases), would not apply. If the rule were otherwise, virtually everything connected with a claim that is ultimately the subject of litigation would be protected. It is not, as virtually every case has recognized. In *Amica Mut. Ins. Co. v. W.C. Bradley Co.*, 217 F.R.D. 79, 83 (D. Mass. 2003), which involved a dispute much like this one, the court emphasized this very idea:

> The documents establish that [the insurer's] initial investigation, which included a cause and origin expert as well as a fire expert, was undertaken for the purpose of assessing coverage for the loss. Mr. Harrington's deposition testimony unambiguously states that [the insurer] regularly hired expert consultants during coverage investigations to rule out arson and fraud and, in fact, did so in connection with this claim. Thus, Mr. Harrington's testimony reveals that the withheld documents relating to the experts would have been generated even in the absence of any litigation and were not created "because of the prospect of litigation." Moreover, many of the challenged documents reveal that the cause of the fire was unknown and all possibilities were being explored. Under such circumstances, [the insurer] could not be acting in anticipation of litigation, much less litigation against the grill manufacturer.

*Id.* at 83.

Given their recognition that insurance company practices often tend to over-claim work-product and attorney-client privileges, a number of courts have reacted by drawing a line at the point where a subrogation decision is made. Documents created prior to that date are, in those courts' views, subject to discovery, regardless of subject matter. *See, e.g., Weber v. Paduano*, 2003 WL 161340, at *8 (S.D.N.Y. 2003); *866 E. 164th St., LLC v. Union Mut. Fire Ins. Co.*, 2016 WL 6901321, at *1 (S.D.N.Y. 2016); *Amy's Kitchen, Inc. v. Stukel Mountain Organics LLC*, 2016 WL 9406695, at *4 (D. Ore. 2016); *Henriquez-Disla v. Allstate Prop. & Cas. Ins. Co.*, 2014 WL 2217808, at *3 (E.D. Pa. 2014). Despite the defendants' privilege logs in this case, we are reluctant

8

to go quite so far. Instead, we have, as sound analysis requires, attempted to assess the circumstances and content of each redacted portion of the documents at issue in order to determine whether they can be withheld or must be produced. Here, as in all cases, the facts are outcome determinative, *Mays v. Dart,* 974 F.3d 810, 819 (7th Cir. 2020), and preclude *a priori* results and mechanical application of broad principles. *Cf. Barnhart v. Thomas*, 540 U.S. 20, 29 (2003)("To generalize is to be imprecise. Virtually every legal (or other) rule has imperfect applications in particular circumstances.")(parentheses in original).

Moreover, in the last analysis, determinations of privilege also involve matters of discretion, *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998); *Patterson v. Avery Dennison Corp*., 281 F.3d 676, 681 (7th Cir. 2002), and discretion involves a range not a point. *Call v. Ameritech Mgmt. Pension Plan*, 475 F.3d 816, 822 (7th Cir. 2007). Thus, while one party or another might disagree with a ruling, an answer is not necessarily right or wrong. Where a court's discretion is involved, "two judges can reach two correct yet contrary conclusions based on identical fact patterns." *Surgery Center at 900 N. Michigan Ave., LLC v. Am. Physicians Assurance Corp*., 317 F.R.D. 620, 629 (N.D. Ill. 2017), citing *Mejia v. Cook County, Ill*., 650 F.3d 631, 635 (7th Cir. 2011); *United States v. Banks*, 546 F.3d 507, 508 (7th Cir. 2008). With this in mind, the rulings on the withheld documents are below.

**Gallagher privilege log** (Gallagher Bassett is XL's "third-party insurance claims administrator").[1]

---

[1] Some entries in the Gallagher log defy reason. For example, the defendant (incorrectly) claims that the following bill from a claims adjuster is both privileged and attorney work-product:

3/4/2020        REVIEW FILE .20[hours]
                           Review billing invoice for file

3/19/2020       REVIEW FILE .40 [hours]

(continued...)

Authors/Recipients:

Aaron Palmer: Senior Resolution Manager from Gallagher Bassett. [Dkt. #67, at 3].

Will Prebil: Large Loss Claims Specialist from AXA XL; received reports and communications concerning XL's subrogation analysis. [Dkt. #67, at 3].

Dean Rauchwerger: "subrogation counsel" with firm of Butler, Weihmuller, Katz, and Craig; retained by Gallagher Basset; retained to "lead the cause and origin investigation and provide a legal analysis of any potential subrogation lawsuit" [Dkt. #67, at 3].

Thomas Kienstra: unidentified. [Dkt. #67, at 3].

> 21-25: author Aaron Palmer, no recipient. Dates October 11 to 16. Claim notes on retention of subrogation counsel and work of subrogation counsel. File with an email to attorney Rauchwerger. Notes regarding inspection were completed before counsel retained or directed inspection and were ordinary course of business. They were merely forwarded to counsel later on. PRODUCE.

> 30-31: author Aaron Palmer, no recipient. Dates November 6. Claim notes on

---

[1](...continued)
          Received documentation from client to review

| | | |
|---|---|---|
| 3/23/2020 | REVIEW FILE | .50 [hours] |
| | received material from legal to review for conference | |
| 3/24/2020 | CONFERENCE | .20[hours] |
| | requesting authorization to confer with counsel for carrier | |

No. 1515-1516.

      The invoice goes on in similar fashion from there. Obviously, there is nothing in this invoice remotely revealing legal advice or client confidences, and there is nothing in it that has anything to do with attorney work-product. It is difficult to fathom how one could claim that this document, and others like it are protected by *both* the attorney-client privilege *and* the work-product doctrine. The fact that counsel is, somehow, consulted does not alone make the document privileged or work-product. It is not. *See 99 Wall Dev. Inc. v. Allied World Specialty Ins. Co.*, 2019 WL 2482356, at *5 (S.D.N.Y. 2019); *MI Windows & Doors, LLC v. Liberty Mut. Fire Ins. Co.*, 2019 WL 1430115, at *3 (M.D. Fla. 2019); *W. Values Project v. U.S. Dep't of Just.*, 317 F. Supp. 3d 427, 434 (D.D.C. 2018); *Arfa v. Zionist Org. of Am.*, 2014 WL 815496, at *9 (C.D. Cal. 2014). But, this notion – which defendant does not even attempt to advance or support in its response brief – is an underlying theme throughout many of the documents it has withheld from discovery. Most of these types of misidentified entries are from the Gallagher log; the Butler log is a much more precise document.

subrogation update. This is actually not authored by Palmer but Rauchwerger and concerns case strategy re: what plaintiff did or did not do. MAY WITHHOLD .

36-37: author Aaron Palmer, no recipient. Dates November 2, 20, 21. Claim notes on subrogation update. Same analysis as previous. MAY WITHHOLD.

41-42: author Aaron Palmer, no recipient. Dates December 2, 20, 21. Claim notes on subrogation update. The redacted document is authored by Frane, not Palmer, and recipient is Rauchwerger. Same analysis as previous. MAY WITHHOLD.

55: authors Aaron Palmer, Thomas Kienstra, no recipient. Dates January 3 and 16. Claim notes on subrogation update. Notes to self revealing work-product strategy. MAY WITHHOLD.

56: author Aaron Palmer, no recipient. Date January 20. Claim notes on subrogation work. Author is actually Prebil, recipient is Palmer. Says only that lawyers were unable to get records from Martin Mack. Neither legal advice nor work-product. PRODUCE.

90: author Dean Rauchwerger, recipients Aaron Palmer, Steven Frame. Date December 5. Email on subrogation work. This is simply about invoices and payments, ordinary course of business. PRODUCE.

96-100: author Aaron Palmer, recipient William Prebil. Date October 16. First report. Redacted portion merely indicates there is a subrogation attorney working on claim and information will be sent to him. PRODUCE.

650: author Aaron Palmer, no recipient. Dates October 16. Claim notes on reserves, subrogation counsel work. Author is actually Prebil, redacted portion is simply Prebil directing Palmer to contact subrogation counsel. PRODUCE.

655-656: author Aaron Palmer, no recipient. Dates October 29, November 20. Claim notes on subrogation counsel work. Rauchwerger is actually the author of the redacted portion. Same type of information and analysis as 30-31. MAY WITHHOLD.

660: authors Aaron Palmer, no recipient. Dates January 3. Claim notes on subrogation update. Redacted portion merely indicates there is a subrogation attorney working on claim. PRODUCE.

661: authors Aaron Palmer, Thomas Kienstra, no recipient. Dates January 16 and 20. Claim notes on reserves, subrogation work. Author is actually Prebil. Says only that lawyers were unable to get records from Martin Mack. Neither legal advice nor work-product. PRODUCE

664-668: author Aaron Palmer, recipient William Prebil. Date December 19. First report. Redacted portion merely indicates there is a subrogation attorney working on claim and information will be sent to him. PRODUCE.

892-893: author Aaron Palmer, no recipient. Dates October 16. Claim notes on reserves, subrogation counsel work. Author is actually Prebil, redacted portion is simply Prebil directing Palmer to contact subrogation counsel. PRODUCE.

895: author Aaron Palmer, no recipient. Dates October 16. Claim notes on reserves, subrogation counsel work. Same as previous: Author is actually Prebil, redacted portion is simply Prebil directing Palmer to contact subrogation counsel. PRODUCE.

911-912: author Aaron Palmer, no recipient. Dates October 16. Claim notes on subrogation counsel work. Rauchwerger is actually the author of the redacted portion. Same type of information and analysis as 30-31. MAY WITHHOLD.

920: authors Aaron Palmer, Thomas Kienstra, no recipient. Dates January 16 and 20. Claim notes on reserves, subrogation work. Same as 661. Author is actually Prebil. Says only that lawyers were unable to get records from Martin Mack. Neither legal advice nor work-product. PRODUCE

923-927: author Aaron Palmer, recipient William Prebil. Date December 19. First report. Same as 664-68. Redacted portion merely indicates there is a subrogation attorney working on claim and information will be sent to him. PRODUCE.

1505-1507: McLarens Invoice for communications with subrogation counsel on investigation. Date January 21. The redacted portion is nothing more than a line item indicating the adjuster spoke to attorney. PRODUCE.

1515-1516: McLarens Invoice post-litigation. Date April 14, 2020. Nothing more than a bill from adjuster to XL. PRODUCE.

**Butler privilege log**:

Authors/Recipients:

Aaron Palmer: Senior Resolution Manager from Gallagher Bassett. [Dkt. #67, at 3].

Will Prebil: Large Loss Claims Specialist from AXA XL; received reports and communications concerning XL's subrogation analysis. [Dkt. #67, at 3].

Dean Rauchwerger: "subrogation counsel" with firm of Butler, Weihmuller, Katz, and Craig; retained by Gallagher Basset; retained to "lead the cause and origin investigation and provide a legal

analysis of any potential subrogation lawsuit" [Dkt. #67, at 3].

Steve Frane: Executive General Adjuster with McLarens, hired by Gallagher Bassett on behalf of XL as its insurance adjuster. [Dkt. #67, at 3].

Dave DeVries: Suppression Safety engineer from Firetech Engineering and served as XL's consultant concerning the performance (or lack thereof) of the fire suppression system. [Dkt. #67, at 3].

Mindy Medley: current litigation counsel.

Sonia Cerda, Geoffrey Waguespack, Andrew Maczko, William Holland: unidentified.

> 31-34: authors Dean Rauchwerger, Aaron Palmer; several recipients. Dates October 5-15. Email chain re assignment and subrogation investigation. Same as Gallagher log 21-24. Ordinary course of business investigation. Attorney's contribution does not go beyond scheduling a phone call/meeting. PRODUCE.
>
> 332: authors Dean Rauchwerger, Steve Frane; Aaron Palmer copied. Dates October 29, November 4. Email chain re cancelled checks and subrogation counsel's work. Case strategy regarding what plaintiff did or did not do. MAY WITHHOLD.
>
> 339-341: authors Dean Rauchwerger, Aaron Palmer; several recipients. Dates October 6, 11. Email chain re assignment and subrogation investigation. Same as 31-34. PRODUCE.
>
> 794-796: authors Dean Rauchwerger, Steve Frane; several recipients. Dates November 4, 20 and December 5. Email chain re cancelled checks, document requests, and subrogation counsel's work. Same as 332. MAY WITHHOLD.
>
> 810-811: authors Dean Rauchwerger, recipient Sonia Cerda. November 14. Emails re contacts.
>
> 816-819: author Aaron Palmer, recipients Dean Rauchwerger and others. December 10, 11. Emails re subrogation counsel's work and investigation. Merely indicates fact that counsel is working on case. PRODUCE.
>
> 824-827: author Will Prebil, recipient Dean Rauchwerger. January 24. Emails re invoices. Arguably deals with case strategy regarding what plaintiff did or did not do. MAY WITHHOLD.
>
> 840: author Dean Rauchwerger, recipient David deVries. January2. Email re call. Same as previous. MAY WITHHOLD.

13

853-857: authors and recipients Dean Rauchwerger, David deVries. January 2, 3. Email re Martin Mack invoices and services (attachment). Same subject and analysis as previous. MAY WITHHOLD.

872-873: author Dean Rauchwerger, recipients Will Prebil and Geoffrey Waguespack. January 3. Email re subrogation counsel's work. Same subject and analysis as previous. MAY WITHHOLD.

899-903: author Dean Rauchwerger, recipients Will Prebil and Geoffrey Waguespack. January 6. Email re subrogation counsel's work. Same subject and analysis as previous. MAY WITHHOLD.

984-989: author Dean Rauchwerger, recipients Will Prebil and Geoffrey Waguespack. January 6, April 29. Email re subrogation counsel's work, Martin Mack invoices. Same subject and analysis as previous. MAY WITHHOLD.

990-995: author Dean Rauchwerger, recipients Will Prebil and Geoffrey Waguespack. January 6, April 29. Email re subrogation counsel's work, Martin Mack invoices. Same subject and analysis as previous. MAY WITHHOLD.

1007-1012: author Dean Rauchwerger, recipients Will Prebil, Geoffrey Waguespack, Sonia Cerda. January 6, April 29. Email re subrogation counsel's work Martin Mack invoices. Same subject and analysis as previous. MAY WITHHOLD.

1025: author Dean Rauchwerger, recipients Steve Frane, Geoffrey Waguespack October 16. Email re subrogation investigation. Attorney work-product drafts. MAY WITHHOLD.

1032-1036: authors Dean Rauchwerger and Aaron Palmer, multiple recipients. October 6-16. Email chain re assignment and subrogation investigation. Scheduling emails regarding initial meeting on regular-course-of-business inspection. Same analysis as 31-34. PRODUCE.

1248-1250: authors Dean Rauchwerger and Aaron Palmer, multiple recipients. October 6, 11. Email chain re assignment and subrogation investigation. Same as previous. PRODUCE.

1251-1253: authors Dean Rauchwerger and Aaron Palmer, multiple recipients. October 6, 11. Email chain re assignment and subrogation investigation. Same as previous. PRODUCE.

1461-1463: authors Dean Rauchwerger and Aaron Palmer, multiple recipients. October 6, 11. Email chain re assignment and subrogation investigation. Same as previous. PRODUCE

>1671-1673: authors Dean Rauchwerger and Steve Frane, multiple recipients. Email chain re notice letters and consultants. October 15. Email exchange mentioning files and names and phone numbers to forward to counsel. No client confidence, advice, or work-product involved. PRODUCE.
>
>1898-1902: authors Dean Rauchwerger and Aaron Palmer, multiple recipients. October 6-16. Email chain re assignment and subrogation investigation. Essentially same as 21-25, with some requests for meeting times/dates. PRODUCE.
>
>2133-2135: authors Dean Rauchwerger and Aaron Palmer, multiple recipients. October 6, 11. Email chain re assignment and subrogation investigation. Same as 21-24. PRODUCE.
>
>2343-2345. authors Dean Rauchwerger and Steve Frane, multiple recipients. October 15. Email chain re: consultants. Essentially same as 1671-1673. PRODUCE.

Finally, of course, invalid claims of privilege are, under appropriate circumstances, compensable, as they serve to withhold from the other side discoverable materials, and certainly a number of invalid claims were inappropriately advanced here. I find that an award to plaintiff of the reasonable expenses, including attorney's fees, it incurred in pursuing the production of these documents is appropriate here. *See* Fed.R.Civ.P. 37(a)(5)(A) and the discussion in *Rickels v. City of South Bend, Indiana,* 33 F.3d 785, 786–87 (7th Cir.1994); *Hangzhou Aoshuang E-Complaint. Co. v. 008Fashion*, 336 F.R.D. 154, 155-158 (N.D. Ill. 2020). Indeed, there can no longer be any doubt of a magistrate judge's authority to award fees under appropriate circumstances. *See* the discussion in *Cage v. Harper,* 2020 WL 1248685 (N.D.Ill. 2020); *Fernandez v. Sikka*, 2019 WL 1232092 at *6 (E.D.N.Y. 2019); *LaJolla Spa M.D., Inc. v. Avidas Pharm., LLC,* 2019 WL 5088559 at *2 (S.D.Cal. 2019); *Robinson v. City of San Diego*, 2019 WL 5446381 at *2 (S.D.Cal. 2019); *Best Pay Phones, Inc. v. Dobrin*, 2018 WL 3612020 at *3 (E.D.N.Y 2018); and *Babcock Power, Inc. v. Kapsalis*, 2017 WL 2837019 at *13 (W.D.Ky. 2017).

We recognize, of course, that an award of fees may not be made if the non-disclosure or response was "substantially justified" or other circumstances would make an award of expenses unjust. Rule 27(a)(5)(A)(ii) and (iii). But those circumstances do not exist here, where numerous documents were inaccurately described or misrepresented, in violation of Fed.R.Civ.P. 26(b)(5)'s requirement that a privilege log must "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." *See, e.g., Urban 8 Fox Lake Corp. v. Nationwide Affordable Hous. Fund 4, LLC*, 334 F.R.D. 149, 164–65 (N.D. Ill. 2020). Moreover, it must be said that the conduct that necessitated these proceedings was that of counsel, who would have been responsible for determining claims of privilege and compiling the privilege logs. Plaintiff shall submit invoices to defense counsel to substantiate the amount of fees reasonably incurred in connection with the present Motion.

## CONCLUSION

For the preceding reasons, the plaintiff's Motion to Compel [Dkt. #60, 68] is granted in part and denied in part. Parties may serve and file specific objections to this order within 14 days after being served with a copy. Failure to raise objections in this manner waives the right to appeal. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); *Davis v. Kayira*, 938 F.3d 910, 917 (7th Cir. 2019); *Tumminaro v. Astrue*, 671 F.3d 629, 633 (7th Cir. 2011)

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 4/2/21