**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CLUB GENE & GEORGETTI, LP, | ) | |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | |
| | ) | |
| vs. | ) | Case No. 1:20-cv-00652 |
| | ) | |
| XL INSURANCE AMERICA, INC., | ) | Judge Virginia Kendall |
| | ) | Magistrate Judge Jeffrey Cole |
| Defendant/Counter-Plaintiff. | ) | |

**XL INSURANCE AMERICA, INC.'S OBJECTIONS TO MAGISTRATE JUDGE'S
OPINION AND ORDER OF APRIL 2, 2021**

Defendant/Counter-Plaintiff, XL Insurance America, Inc. ("XL"), by and through its attorneys, CLAUSEN MILLER P.C., pursuant to Fed.R.Civ.P. 72(a) and 28 U.S.C. § 636(b)(1)(A), objects to the Memorandum Opinion and Order ("Order") issued by Magistrate Judge Jeffrey Cole on April 2, 2021 (Doc. #79), regarding a Motion to Compel (Doc. #60) ("Motion") filed by Club Gene & Georgetti, LP ("G&G") against XL. Magistrate Judge Cole's Order (Doc. #79) that is the subject of these objections is attached as Exhibit 1.

## I.     INTRODUCTION

This is a first-party property insurance coverage dispute arising out of an October 5, 2019 fire at the Gene & Georgetti restaurant in the River North neighborhood of Chicago. The Order addressed and ruled on G&G's Motion regarding documents that XL withheld or redacted subject to the attorney-client privilege and/or work product doctrine[1] in response to written discovery and/or subpoenas *duces tecum* served by G&G. Magistrate Judge Cole's Order granted in part and ***denied***

---

[1] XL also redacted certain of these documents because they contained information regarding XL's insurance reserves—information that was specifically *not sought* by the Motion. *See* Doc. #60, p. 8, fn 1. The Order is silent as to whether XL's insurance reserve information is discoverable, but nonetheless orders production of documents that contain reserve information XL redacted. XL maintains that insurance reserve information should not be produced. *See, e.g., Spearman Industries v. St. Paul Fire & Marine*, 128 F.Supp.2d 1148 (N.D.Ill. 2001); *Harleysville Lake States Ins. Co. v. Lancor Equities, Ltd.*, 2014 U.S.Dist.LEXIS 154685 (N.D.Ill. Oct. 31, 2014)(Ex. 2).

*in part* G&G's Motion after an *in camera* review, but also—despite siding with XL on nearly half (seventeen (17) out of thirty-nine (39[2])) of the documents that were sought by the Motion—imposed fees against XL. (Doc. #79, p. 16). XL has since received G&G's counsel's fees in connection with the Order, and G&G's counsel seeks over $16,000 in attorneys' fees in connection with the Motion. (*See* Ex. 3).

As an initial matter, XL respectfully disagrees with Magistrate Judge Cole's rulings that the documents ordered to be produced are not privileged and/or protected. That substantive issue is addressed in these objections, as well as the absence of clarity in the Order concerning the discovery of XL's insurance reserves that were not a subject of the Motion. *See* fn 1, *supra.* (There are factual inaccuracies, too, within the Order).

XL's principal focus in these objections, however, is on the imposition of attorney's fees. XL submits that the imposition of fees—especially where nearly half of the documents were *not* ordered to be produced—is clearly erroneous and contrary to law, and XL's objections should be sustained. The Order cites to "Rule 27(a)(5)(A)(ii) and (iii)" regarding an award of fees. (*See* Ex. 1, Doc. #79, p. 16). XL presumes that Rule "27" is a typo, but Rule 37—the Rule that was presumably intended to be cited—does *not* contemplate an award of "fees"[3] where a motion to compel is, as here, granted in part and denied in part. Rule 37(a)(5)(C), "If the Motion Is Granted in Part and Denied in Part," provides that, "the court may issue any protective order authorized under Rule 26(c) and may, after giving an opportunity to be heard, ***apportion[4] the reasonable expenses*** for the motion." (Fed.R.Civ.P. 37(a)(5)(C)). (Emphasis added).

---

[2] G&G's original Motion sought the production of forty-one (41) documents. *See* Doc. #60, p. 13. In connection with the Motion, XL willingly produced two (2) of those documents to G&G. *See* Doc. #67, p. 3, fn. 3.

[3] Rule 37(a)(5)(A) and (B) both specifically contemplate "attorney's fees." Rule 37(a)(5)(C), which applies here, does not, and is specific to "expenses" only.

[4] Here, by Magistrate Judge Cole's Order, XL was "right" on 43.6% of the documents at issue on the Motion.

2

In other words, under Rule 37(a)(5)(C)'s plain language, on G&G's "best day," it was only entitled to an *apportionment of expenses* in connection with the Motion (which have not been claimed by G&G (*see* Ex. 3)), and not the entirety of its attorney's fees. XL's objections should be sustained.

## II.    BACKGROUND

This is a first-party property insurance coverage dispute between G&G and its insurance carrier, XL, arising out of an October 5, 2019 fire at the Gene & Georgetti restaurant in the River North neighborhood of Chicago. The central legal issue in this case is whether the "Protective Safeguards Endorsement" in the insurance policy that XL issued to G&G applies. The Protective Safeguards Endorsement requires—as a condition of insurance coverage—that G&G service, clean, and maintain the restaurant's fire suppression system on a biannual basis. The plain application of the insurance policy's Protective Safeguards Endorsement is dispositive in this case, and an issue on which the Parties have spent ample time and effort litigating.[5] This discrete issue is all that this case is about, but G&G has expended considerable effort to create a purported "waiver argument," and contends that the documents subject to the Motion bear on that point. (Doc. #60).

G&G, however, ignores two important points in its efforts as to waiver: (i) the Protective Safeguards Endorsement is a *condition* of coverage which, for waiver to at least potentially apply, XL would have had to have known G&G failed to service its fire suppression system *before* the October 5, 2019 fire—which XL did not because of G&G's (mis)representations in its insurance application—and issued insurance coverage anyway; and (ii) that the Standard Fire Policy actually does not apply (despite G&G's prior arguments, *see, e.g.,* Doc. #30), as the terms of the Standard Fire Policy specifically provide, "No permission affecting this insurance shall exist, or waiver of any

---

[5] XL has been successful in the disputes to date concerning the Protective Safeguards Endorsement. *See, e.g.,* Doc. #s 27, 30, 51, and 56. G&G unsuccessfully sought judgment on the pleadings regarding the application of the Protective Safeguards Endorsement (*see* Doc. #48), and was also unsuccessful in having XL's counterclaim dismissed. *See* Doc. #s 55 and 66.

3

7232778.1

provisions be valid, unless granted herein or expressed in writing added hereto." (Doc. #30-1, p. 2 of 2).

In the Motion that gave rise to these objections, G&G sought the production of certain materials within two sets of documents:

(i)    attorney-client communications and communications protected by the work product doctrine within the files of XL's own subrogation counsel ("Butler Documents"); and

(ii)    documents within the files of XL's third-party administrator, Gallagher Bassett ("GB Documents"), regarding attorney-client communications placed within Gallagher Bassett's claim activity notes, and documents referencing the work product of XL and its subrogation counsel.

The Order is critical of the privilege logs that XL prepared in connection with the production of the Butler Documents and GB Documents (Ex. 1, Doc. #79, at, *e.g.,* pp. 4-5), as well as discovery practice in insurance litigation, generally (*id.*, at pp. 1-2, 4 ("invariably, insurance companies too often make blanket claims of attorney-client privilege and work-product …"), 5, 6, and 8 ("insurance company practices often tend to over-claim work-product and attorney-client privileges"). Ultimately, the Order imposes fees on XL, because of purportedly inaccurate descriptions within the privilege logs prepared in connection with XL's production (but, the Order specifically provides that "the Butler log is a much more precise document" (Ex. 1, Doc. #79, p. 10)), and then reminds the Parties when objections are to be filed. (Ex. 1, Doc. #79, p. 16).

On April 13, 2021, G&G provided XL with its fees in response to the Order. (*See* Ex. 3). G&G's counsel's fee statement only includes fees; no expenses are listed. Counsel's fees total $16,190.00. (*Id.*)

4

### III.   XL's Objections[6]

#### A.   Rule 37(a)(5)(C)'s Plain Statutory Language Does Not Contemplate Attorney's Fees

G&G brought its Motion under Rule 37.  (*See* Doc. #60, p. 1).  Under Rule 37, three outcomes are considered when a Motion to Compel is brought: (i) the motion is granted; (ii) the motion is denied; or (iii) the motion is granted in part and denied in part.  *See* Rule 37(a)(5).  If the motion is granted (which did not happen here), "the court must … require [the losing party] … pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." (Fed.R.Civ.P. 37(a)(5)(A)).  If the motion is denied (which did not happen here), "the court must … require [the losing party] pay the party … who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees."  (Fed.R.Civ.P. 37(a)(5)(B)).  If the motion is granted in part and denied in part (*which is exactly what happened here*), "the court may issue any protective order authorized under Rule 26(c) and ***may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion.***"   (Fed.R.Civ. P. 37(a)(5)(C)).   (Emphasis added).   This provision within Rule 37 is silent on the ability of a semi-prevailing party (as here) to collect its attorney's fees.  It is also, *unlike* Rule 37(a)(5)(A) and (B), a discretionary provision.

Courts recognize that there is an important distinction between expenses only, and expenses, "including attorney's fees." For example, in *United Prop. & Cas. Ins. v. Couture*, 2020 U.S.Dist.LEXIS 107416 (D.S.C. June 19, 2020)(Ex. 4), the United States District Court for the District of South Carolina denied the defendant's motion for attorney's fees where the motion to compel (which prompted the request for fees) was only granted in part.[7]

---

[6] XL also incorporates by reference the arguments made in its Response in Opposition to the Motion.  *See* Doc. #67.

[7] XL also notes the language within Rule 37(a)(5)(C) that affords an "opportunity to be heard" in connection with the "apportionment of expenses."  Although XL recognizes that the Motion was fully briefed by the Parties concerning those documents that were subject to it, there was essentially no argument by G&G or XL regarding whether or why fees or expenses were justified here.  *See* Doc.#s 60, 67, and 68.  XL has not had an opportunity "to be heard" concerning whether

In denying the motion for attorney's fees, the *Couture* court held that Rule 37(a)(5)(C) applied:

> The court's finding that Rule 37(a)(5)(C) applies to this motion as opposed to Rule 37(a)(5)(A) is not a distinction without a difference. Rule 37(a)(5)(A) explicitly allows for the awarding of attorney's fees, while Rule 37(a)(5)(C) only allows for reasonable expenses. Standard judiciary tools for interpretation of the Federal Rules of Civil Procedure include interpretation by negative implication and the plain meaning of language. *See Keene Corp. v. United States*, 508 U.S. 200, 208, 113 S.Ct. 2035, 124 L.Ed. 2d 118 (1993). The presence of the phrase 'attorney's fees' in both subsections (A) and (B) in Rule 37(a)(5) as an allowable monetary award coupled with the phrase's absence in subsection (C) in Rule 37(a)(5) indicates to the court that compensation for attorney's fees was not intended … As such, the court finds that a plain-language interpretation shows that attorney's fees are not awardable under Rule 37(a)(5)(C). In this instance, [defendant] only submitted an award related to attorney's fees. … Because the court is not permitted to grant attorney's fees to [defendant] under this motion pursuant to Rule 37 (a)(5)(C), the court denies [defendant's] motion.

2020 U.S.Dist.LEXIS 107416, *6-*8.

*See also, EEOC v. Bardon, Inc.*, 2010 U.S.Dist.LEXIS 23899, *8-*9 (D.Md. March 12, 2010)(Ex. 5)(request for attorney's fees denied where motion to compel was granted in part as Rule 37(a)(5)(C) "permits awarding 'expenses,' not 'attorney's fees' as it does explicitly in subsections (A) and (B). In practice, there is a difference between expenses and attorneys' fees. 'Attorney's fees' pertains to fees paid to attorneys for their time and services. 'Expenses' are the additional costs such as filing, copying, travel, etc. Courts use these terms to indicate different monetary expenditures. This difference between expenses and attorneys' fees is also highlighted in the Rule itself.") and *EEOC v. McCormick & Schmick's Seafood Restaurants*, 2012 U.S.Dist.LEXIS 161511 (D.Md. Nov. 8, 2012)(Ex. 6).

XL recognizes that certain courts in this district have considered "fees" where motions under Rule 37 were granted in part and denied in part. *See, e.g., Schmalz v. Vill. of North Riverside*, 2018

---

expenses are, or are not, appropriate.

6

U.S.Dist.LEXIS 235384 (N.D.Ill. April 19, 2018)(Ex. 7); *RBS Citizens, N.A. v. Husain*, 291 F.R.D. 209 (N.D.Ill. 2013). The important distinction between the plain language of "fees" versus "expenses" within Rule 37 does not appear to have ever been evaluated by the Seventh Circuit, however.

XL maintains that *even if* Rule 37(a)(5)(C) contemplates the imposition of attorney's fees (which, by the plain statutory terms, it does not), XL's objections should still be sustained on the imposition of attorney's fees as XL was—even according to Magistrate Judge Cole—"right" on nearly half of the documents that are the subject of the Motion. This fact, standing alone, supports sustaining XL's objections as to the fees assessed. Indeed, XL was "substantially justified" (*see* Rule 37) in its decisions concerning those documents that are the subject of the Motion as many are not discoverable pursuant to the Order; XL prepared detailed, lengthy privilege logs (Doc. #s 60-1 and 60-2); XL filed an Opposition Brief (Doc. #67) supported by ample case law; and XL is appropriately alert to cases holding that the disclosure of certain attorney-client communications may constitute a waiver as to other documents withheld. (*See* Doc. #67, p. 3, fn 2, and Doc #81, Magistrate Judge Cole's Memorandum Opinion and Order compelling production of G&G's purportedly privileged documents under waiver theory in response to XL's Motion for Determination of Privilege and to Compel (Doc. #70)).

Additionally, Rule 37(a)(5)(C) nonetheless does not require the imposition of expenses (or fees), unlike Rule 37(a)(5)(A) and (B) which both mandate the imposition of "expenses … including attorney's fees." (Again, however, Rule 37(a)(5)(A) and (B) do not apply). Rule 37(a)(5)(C) is discretionary, and XL's actions do not support the discretionary imposition of attorney's fees (or, the only allowable expenses) here.

XL's objections as to the Order's imposition of fees should be sustained.

7232778.1

**B.      Documents Ordered to Be Produced are Nonetheless Generally Not Discoverable**

The Order requires the production of documents that are not discoverable and are protected by the attorney-client privilege and/or work product doctrine.  The Order addresses each of the documents.  (*See* Ex. 1, Doc. #79, pp. 9-15).

As an initial matter, the scope of discovery is clear:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional[8] to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Information within the scope of discovery need not be admissible in evidence to be discoverable.

(Fed.R.Civ.Pro. 26(b)(1)).

As to the attorney-client privilege, it is "the oldest of the privileges of confidential communications known to the common law. … Its purpose is to encourage and promote full and frank consultation between a client and legal advisor by removing the fear of compelled disclosure of information." *Herbster v. N. Am. Co. for Life & Health Ins.*, 150 Ill.App.3d 21, 27 (2d Dist. 1986). The attorney-client privilege "'recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer being fully informed by the client.'" *Fischel & Kahn v. van Straaten Gallery*, 189 Ill.2d 579, 586 (2000)(internal citations omitted).[9] *See also,*

---

[8] As to proportionality, the Order does not address XL's arguments in Response to the Motion on the point.  Through the Motion, G&G sought documents related to the work of XL's subrogation counsel in a first-party property insurance coverage dispute involving the application of the Protective Safeguards Endorsement.  G&G maintains that the two are related to support its "waiver" argument; however, it is undisputed that G&G was told of XL's decision to no longer release indemnity payments in light of the Protective Safeguards Endorsement *before* its subrogation counsel had concluded his analysis and investigation.  G&G tries to conflate subrogation counsel's work with the application of the Protective Safeguards Endorsement, but the facts do not bear this out.  In other words, the documents originally sought by the Motion are not proportional to the needs of the case concerning the plain application of the Protective Safeguards Endorsement.

[9] The Order does not cite to any Illinois state law in connection with an analysis of the attorney-client privilege.  But, this is not correct.  *See, e.g., Hodges v. Archer-Daniels-Midland Co.*, 2019 U.S.Dist.LEXIS 233684, *6 (C.D.Ill. Aug. 21, 2019)(Ex. 8)(attorney-client privilege is an evidentiary privilege, so Illinois state law applies).

7232778.1

*e.g., Upjohn v. United States,* 449 U.S. 383, 389 (1981); *United States v. National Assoc. of Realtors*, 242 F.R.D. 491 (N.D.Ill. 2007); *Trepanier v. Chamness*, 2005 U.S.Dist.LEXIS 23293 (N.D.Ill. 2005)(Ex. 9).

Finally, "the work product doctrine, announced in *Hickman v. Taylor,* 329 U.S. 495 (1947), and codified as Rule 26(b)(3) of the Federal Rules of Civil Procedure, protects from disclosure otherwise discoverable documents. The doctrine shields documents and tangible things 'prepared in anticipation of litigation or for trial by and for another party or by or for that other party's representative (including that other party's attorney, consultant, surety, indemnitor, insurer, or agent) …". *Trepanier*, 2005 U.S.Dist.LEXIS 23293, *5-*6. (Ex. 9). In connection with the application of the work product doctrine here, XL maintains that subrogation counsel's work and XL's subrogation investigation are parallel to the "insured-insurer" privilege, which protects the discovery of documents where the insurer is under an obligation to defend the insured. *Hodges*, 2019 U.S.Dist.LEXIS 233684, *8-*9 (Ex. 8). *See also, People v. Ryan,* 30 Ill.2d 456 (1964). In other words, discovery into the documents of the liability insurers of the potential targets of XL's subrogation investigation, i.e., the restaurant's fire suppression service and maintenance provider and the kitchen hood cleaners, after the October 5, 2019 fire would not be permitted, so why should the entity pursuing that subrogation be treated differently?

As to the documents[10] that Magistrate Judge Cole concluded are discoverable, XL responds as follows:

**GB Documents:**

- **GB_01515-GB_0516**: The Order focuses on this document in detail, which is an invoice generated by XL's insurance adjuster with McLarens. (*See* Ex. 1, Doc. #79, pp. 9-10, fn1).

---

[10] XL will produce GB_00056 and GB_00090, and those documents are not issue on these objections.

9

This invoice, however, was generated *post-litigation*, was specifically logged as such (Doc. #60-1, p. 4 of 4), and references post-litigation activities, including this lawsuit and discussions between XL's counsel and XL's independent insurance adjuster with McLarens. Post-litigation documents have been held by courts as not even needing to be logged because such documents are considered to have been created *because of* the lawsuit. *See, e.g., Frye v. Hamilton County Hosp.*, 2019 U.S.Dist.LEXIS 234436, *10 (N.D.Iowa March 26, 2019)(Ex. 10); *Prism Techs. LLC v. Adobe Systems,* 2011 U.S.Dist.LEXIS 131321, *10-*11 (D.Neb. Nov. 14, 2011)(Ex. 11). In other words, this document was appropriately withheld by XL.

- **GB_00021-GB_00025**: This document includes the initial assigning email to subrogation counsel dated October 11, 2019,[11] as well as information concerning insurance reserves, which were not sought by the Motion, and correspondence concerning subrogation counsel's initial work. XL submits that correspondence retaining counsel, for example, indicates a client is seeking legal advice, and should not be produced.

- **GB_00096-GB_00100, GB_00664-GB_00668, and GB_00923-GB_00927**: This document, Gallagher Bassett's First Report to XL (produced three times), is minimally redacted for two reasons: (i) insurance reserves; and (ii) a reference to subrogation counsel's work and knowledge. As to the former, G&G specifically did *not* seek the production of insurance reserves (but the Order fails to make that distinction), and, as to the latter, the reference to subrogation counsel's work and knowledge is protected by the attorney-client privilege and work product doctrine.

---

[11] This is an example of a factual inconsistency in the Order. Magistrate Judge Cole focuses on when attorney Rauchwerger was retained on XL's behalf in the Order. *See* Ex. 1, Doc. #79, p. 3. As is clear from GB_00021, he was retained five (5) business days after the October 5, 2019 fire, not "nine days later" as Magistrate Judge Cole indicated. (Ex. 1, Doc. #79, p. 3).

7232778.1

- **GB_00650**: This document consists of claim notes regarding insurance reserves and the retention of counsel. Again, insurance reserve information was not part of the Motion, and the retention of counsel concerns the seeking of legal advice.

- **GB_00660**:  This document consists of claim notes regarding insurance reserves and subrogation counsel's work. Insurance reserves were not part of G&G's Motion, and the work of subrogation counsel is protected by the attorney-client privilege and work product doctrine. Perhaps most importantly, however, the redactions in GB_00660 are identical to two of the three redactions in GB_00055, which Magistrate Judge Cole ordered may be withheld.  (*See* Ex. 1, Doc. #79, p. 11).

- **GB_00661**: Much like the documents listed above, this document contains insurance reserve information (not sought by the Motion) and the work of subrogation counsel.

- **GB_00892-GB_00893 and GB_00895**: Again, these claim notes contain insurance reserve information (not sought by the Motion), and refer to the retention of subrogation counsel.

- **GB_00920**: Similar to those documents listed above, these claim notes also contain insurance reserve information, and refer to the work of subrogation counsel.

- **GB_01505-GB_01507**: This minimally redacted invoice from XL's independent insurance adjuster, McLarens, specifically discusses the substance of a conversation with XL's subrogation counsel, and, therefore, should not be produced.

**Butler Documents[12]:**

- **BUTLER_00031-BUTLER_00034   and   BUTLER_00339-BUTLER_00341:**   These documents are the same as GB_00021-GB_00025.  They include the initial assigning email

---

[12] The Order indicates that BUTLER_000840 may be withheld.  (Ex. 1, Doc. #79, p. 13).  This document, however, was produced by XL in connection with responding to the Motion (*see* Doc. #67, p. 3, fn3), and was not submitted to Magistrate Judge Cole for *in camera* inspection.

7232778.1

to subrogation counsel dated October 11, 2019, as well as information concerning insurance reserves, which were not sought by the Motion, and correspondence concerning subrogation counsel's initial work. Correspondence retaining counsel, for example, indicates a client is seeking legal advice, and should not be produced.

- **BUTLER_00816-BUTLER_00819**: This minimally redacted email correspondence does not "merely indicate[] fact that counsel is working on case." (Ex. 1, Doc. #79, p. 13). Rather, it contains a specific request for a specific aspect of legal advice, as well as the nature of subrogation counsel's work. It is not discoverable.

- **BUTLER_01032-BUTLER_01036, BUTLER_01248-BUTLER_01250, BUTLER_01251-BUTLER_01253, BUTLER_01461-BUTLER_01463, BUTLER_01898-BUTLER_01902, and BUTLER_02133-BUTLER_02135**: These sets of partially redacted email correspondence include the initial retention of counsel, and the status of the subrogation investigation—information which is protected by the attorney-client privilege and/or work product doctrine.

- **BUTLER_01671-BUTLER_01673 and BUTLER_02343-BUTLER_02345**: This partially redacted email correspondence specifically includes the original targets of the subrogation investigation who were ultimately put on notice in writing by XL's subrogation counsel. This is protected work product and attorney-client privileged communications.

## IV. CONCLUSION

XL's objections to the Order should be sustained. First, G&G's counsel's attorney's fees should not be assessed in connection with the Motion, given (i) the plain language of Rule 37(a)(5)(C) which does not contemplate the imposition of attorney's fees when a motion is granted in part and denied in part, as here, and (ii) XL was substantially justified in connection with its actions as they relate to the treatment of those documents that are subject to the Motion. Second, the documents that

7232778.1

the Order indicates should be produced are, actually, generally not discoverable and are protected by the attorney-client privilege, work product doctrine, and/or contain insurance reserves. XL's objections should be sustained.

Respectfully submitted,

/s/ Dennis D. Fitzpatrick
Dennis D. Fitzpatrick

DENNIS D. FITZPATRICK
MINDY M. MEDLEY
CLAUSEN MILLER P.C.
10 South LaSalle Street
Chicago, Illinois 60603-1098
(312) 855-1010
dfitzpatrick@clausen.com
mmedley@clausen.com
*Attorneys for XL Insurance America, Inc.*

13

7232778.1

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 16th day of April, 2021, she electronically filed the foregoing with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, using CM/ECF system, which sent notification of such filing to the parties who are registered participants with the System.

*/s/ Nicole Andersen*

## SERVICE LIST

Edward Eshoo, Jr.
Christina M. Phillips
MERLIN LAW GROUP
181 West Madison, Suite 3475
Chicago, Illinois 60602
Telephone: (312) 260-0806
Facsimile: (312) 260-0808
eesshoo@merlinlawgroup.com
cphillips@merlinlawgroup.com

14

7232778.1